[Cite as *Matheson v. Matheson*, 2024-Ohio-2477.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

MARIA MATHESON

    Appellant/Cross-Appellee

v.

JAMES MATHESON

    Appellee/Cross-Appellant

C.A. Nos.    23CA012011
                23CA012012

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    19DU086106

DECISION AND JOURNAL ENTRY

Dated: June 28, 2024

SUTTON, Presiding Judge.

{¶1}    Plaintiff-Appellant/Cross-Appellee, Maria Matheson, appeals the judgment of the Lorain County Court of Common Pleas, Domestic Relations Division. Defendant-Appellee/Cross-Appellant, James Matheson, appeals the same judgment. For the reasons that follow, this Court affirms, in part, and reverses, in part.

I.

**Relevant Background**

{¶2}    In *Matheson v. Matheson*, 9th Dist. Lorain No. 22CA011881, 2023-Ohio-1709, ¶ 9 ("*Matheson I*") we remanded this matter to the trial court to: "(1) calculate the specific amount of marital debt, and (2) state which marital debt must be paid with $200,000.00 in equity from the sale of the parties' marital home." On remand, the trial court addressed these issues stating:

> Based upon the facts above and Mrs. Matheson's testimony, the [c]ourt finds that as of the filing of the complaint for divorce on May 16, 2019, the parties' marital debt was approximately $100,000.00.

During the divorce, [Mr.] Matheson attempted to pay off debt by obtaining loans and using the loan proceeds to reduce said debt. * * * Specifically, [Mr.] Matheson obtained six new loans from various lenders after this action was filed, which added to the parties' existing debts and complicated the case as it pertained to the issue of dividing the marital debts.

However, as of November 10, 2021, when the trial commenced, no remaining marital debt existed because [Mr. Matheson] made a series of unilateral financial maneuvers including obtaining further loan debt to pay off prior debts which included the $100,000.00 of marital debt at the time of the filing of the complaint for divorce.

The [c]ourt will note [Mr. Matheson's] actions of obtaining more debt was in violation of the [c]ourt's mutual restraining orders dated May 20, 2019, and occurred throughout the divorce litigation including obtaining loans during the actual trial in the fall of 2021 and the winter of 2022.

As such, the [c]ourt finds that there is no marital debt because [Mr. Matheson] had paid the entirety of the marital debt that existed when the case began during the divorce litigation. The [c]ourt further finds that [Mr.] Matheson's custom of obtaining compounding debt while the case was pending (including obtaining loans during the trial) should be to his detriment and his sole responsibility. Consequently, [Mr.] Matheson will be solely responsible for the remaining outstanding BHG, Best Egg, and Lightstream loans.

Additionally, the trial court equally divided the $330,000.00 in equity from the sale of the marital residence between both parties, less the money Mrs. Matheson owed to the guardian ad litem and Mr. Matheson's attorney.

{¶3} Mrs. Matheson appeals raising two assignments of error for our review. Mr. Matheson cross-appeals raising one assignment of error for our review. To aid our analysis, we will first address Mr. Matheson's cross-appeal.

## II.

**Cross-Appeal**

### ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN DIVIDING THE PARTIES' MARITAL DEBT ON REMAND FROM THIS COURT.**

{¶4}    Mr. Matheson's sole assignment of error addresses the allocation of the parties' debt.

{¶5}    R.C. 3105.171(B) states:

In divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property, excluding the social security benefits of a spouse other than as set forth in division (F)(9) of this section, in which one or both spouses have an interest.

"Although the allocation of debt is not specifically addressed by the statute, the division of property also includes marital debt." *Yousef v. Iskander*, 9th Dist. Summit No. 29703, 2021-Ohio-3322, ¶ 6, citing *Mullen v. Mullen*, 9th Dist. Summit No. 28083, 2017-Ohio-77, ¶ 11, citing *Smith v. Smith*, 9th Dist. Summit No. 26013, 2012-Ohio-1716, ¶ 8.  "If the trial court finds sufficient evidence supports the existence of the alleged debts, it must classify such debts as marital or separate in nature, determine the amount of the debts, and consider the debts in dividing the marital and separate property equitably between the spouses pursuant to R.C. 3105.171." *Habtemariam v. Worku*, 10th Dist. Franklin No. 19AP-47, 2020-Ohio-3044, ¶ 58.

{¶6}    "Because the determination of whether property is marital or separate is a fact-based determination, we review a trial court's decision under a manifest-weight-of-the-evidence standard." *Kolar v. Kolar*, 9th Dist. Summit No. 28510, 2018-Ohio-2559, ¶ 30, citing *Morris v.*

*Morris*, 9th Dist. Summit No. 22778, 2006-Ohio-1560, ¶ 23. When reviewing the manifest weight of the evidence, the appellate court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way * * *." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001). "Only in the exceptional case, where the evidence presented weighs heavily in favor of the party seeking reversal, will the appellate court reverse." *Boreman v. Boreman*, 9th Dist. Wayne No. 01CA0034, 2002-Ohio-2320, ¶ 10.

{¶7} Further, "[a] trial court enjoys broad discretion in fashioning an equitable division of marital property." *Wilson v. Wilson*, 9th Dist. Summit No. 30538, 2023-Ohio-3521, ¶ 15, quoting *Stepp v. Stepp*, 9th Dist. Medina No. 03CA0052-M, 2004-Ohio-1617, ¶ 10. "We review a property division in a divorce proceeding to determine whether the trial court abused its discretion." *Id.* An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying this standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶8} Here, the trial court determined there was no marital debt, as of the date of the parties' divorce, due to Mr. Matheson's ongoing financial tactics of taking out compounding loans, for more than what was owed, and accumulating additional debt. Mr. Matheson, in direct contravention of the trial court's May 20, 2019 mutual restraining orders, took out several additional loans at a time in which he was prohibited, by court order, from doing so. As such, the trial court determined Mr. Matheson is "solely responsible for the remaining outstanding BHG,

Best Egg, and Lightstream loans." At trial, Mr. Matheson submitted Exhibits E, F, and G, which are self-created lists of his alleged current debt, along with his attempt to show how he used the BHG and Sofi loans, without any corroborating evidence to support his numerical calculations. Mr. Matheson testified he borrowed these loans after May 20, 2019, when he was subject to the mutual restraining order. Further, as to the BHG loan for $250,000, which was borrowed on March 29, 2021, Mr. Matheson admitted he did not use the BHG loan for its stated purpose of "[b]usiness [d]evelopment[,]" but instead indicated he used it to pay "personal debt." Additionally, Mr. Matheson admitted he took out loans to make court ordered payments he was solely responsible for making, including taxes and mortgage payments. Mr. Matheson also used loan money to pay college tuition.

{¶9} Based upon this record, this is not the exceptional case where the trial court lost its way in determining the remaining loans, which were unilaterally borrowed by Mr. Matheson while he was subject to the mutual restraining order, are the separate debt of Mr. Matheson. Further, based upon Mr. Matheson's ongoing financial mishandlings throughout the pendency of this action, which were prohibited by the mutual restraining order, we cannot say the trial court abused its discretion in allocating one hundred percent of the separate debt to Mr. Matheson.

{¶10} Further, any of Mr. Matheson's arguments regarding the division of the parties' property, which were not raised in *Matheson I*, are barred by the doctrine of res judicata. "The doctrine of res judicata bars any claims between the parties that were either litigated or could have been litigated in a prior proceeding." *Santomauro v. SUMSS Prop. Mgmt., LLC*, 9th Dist. Summit No. 29948, 2023-Ohio-280, ¶ 20, quoting *C.K. v. D.K.*, 9th Dist. Lorain No. 21CA011733, 2022-Ohio-647, ¶ 22.

{¶11} Accordingly, Mr. Matheson's sole assignment of error is overruled.

**Appeal**

## ASSIGNMENT OF ERROR I

**IT WAS AN ABUSE OF THE TRIAL COURT'S DISCRETION TO ONLY GRANT SEVEN YEARS OF SUPPORT AT THE RATE OF $8,500.00 PER MONTH WHEN THE PARTIES WERE MARRIED 32 YEARS AND HUSBAND['] S [NET] INCOME [IS] NEARLY FOUR TIMES THAT AMOUNT PER MONTH.**

**{¶12}** In her first assignment of error, Mrs. Matheson argues the trial court erred in calculating the amount and duration of spousal support.

**{¶13}** "Prior to considering appropriate and reasonable spousal support, a trial court must determine what constitutes marital property or separate property and then divide the marital property equitably between the spouses." *Yousef*, 2021-Ohio-3322, at ¶ 11; R.C. 3105.18(B); R.C. 3105.171.

**{¶14}** Because on remand the trial court reallocated the division of the parties' debt and the amount of equity the parties are to receive from the sale of the marital residence, the trial court must "consider that distribution in the determination of appropriate and reasonable spousal support pursuant to R.C. 3105.18." *Mullen*, 2017-Ohio-77, at ¶ 13. Upon review of the judgment entry relevant to this appeal, the trial court did not consider the newly divided marital and separate property of the parties in its determination of appropriate and reasonable spousal support. We note, in this judgment entry, the trial court only referenced temporary spousal support, which Mrs. Matheson is no longer receiving. Further, in this judgment entry, the trial court took judicial notice of the June 22, 2022 judgment entry wherein it conducted its spousal support calculation based upon the prior division of marital and separate property, which, after reallocation, is no longer applicable to determining appropriate and reasonable spousal support in this matter.

{¶15} Accordingly, Mrs. Matheson's first assignment of error is premature, and we decline to address it.

## ASSIGNMENT OF ERROR II

**IT WAS AN ABUSE OF DISCRETION FOR THE COURT TO DENY WIFE'S REQUEST FOR RETROACTIVE ADJUSTMENT OF SPOUSAL SUPPORT.**

{¶16} In her second assignment of error, Mrs. Matheson argues the trial court abused its discretion in denying her request for a retroactive adjustment of temporary spousal support. For the following reasons, we agree.

{¶17} "'[A] temporary [spousal] support order[ ] is provisional in nature, subject to modification at any time,' prior to final judgment." *Davis v. Davis*, 9th Dist. Wayne No. 10CA0018, 2011-Ohio-2322, ¶ 9. "R.C. 3105.18(B) provides that, during the pendency of a divorce proceeding, a court may award reasonable spousal support to either party. A purpose of such an award is to preserve the status quo during the proceeding." *DiLacqua v. DiLacqua*, 88 Ohio App.3d 48, 54 (9th Dist.1993). "Temporary support orders, like other interlocutory orders, are reviewable after entry of a final decree disposing of the action in which they were entered." *DiLacqua* at 57. "This Court reviews a spousal support award under an abuse of discretion standard." *Hirt v. Hirt*, 9th Dist. Medina No. 03CA0110-M, 2004-Ohio-4318, ¶ 8. "An abuse of discretion implies that the court's decision is arbitrary, unreasonable, or unconscionable." *Smith*, 2012-Ohio-1716, at ¶ 8, citing *Blakemore*, 5 Ohio St.3d at 219.

{¶18} Here, on December 26, 2019, the trial court ordered Mr. Matheson to pay Mrs. Matheson the following in temporary support: $4,426.00 per month ($2,486.68 for child support, and $1,939.32 for spousal support. Further, Mrs. Matheson was awarded temporary exclusive use of the parties' marital residence and Mr. Matheson was ordered to pay the:

1. First and second mortgage on marital residence;
2. Property taxes on marital residence;
3. Homeowners insurance on marital residence;
4. Utilities for marital residence (electric, gas, water/sewer, cell phone/telephone, cable/internet, and trash collection); and
5. Any reasonable and necessary repairs on Mrs. Matheson's vehicle.

**{¶19}** On July 31, 2020, a magistrate modified the temporary order by terminating Mr. Matheson's payment of $4,426.00 per month, but indicated Mr. Matheson must still pay the expenses relating to the marital residence and Mrs. Matheson's vehicle and characterized these payments as temporary spousal support. Further, the magistrate ordered Mr. Matheson to pay $2,408.00 per month in temporary child support.

**{¶20}** The magistrate again modified the temporary order on November 19, 2020, this time reinstating temporary spousal support in the amount of $1,504.96 per month, and ordering temporary child support in the amount of $2,795.04 per month. The temporary order also maintained that Mr. Matheson pay all the expenses related to the marital residence, but did not include any maintenance for Mrs. Matheson's vehicle.

**{¶21}** After the sale of the marital residence on August 10, 2021, Mrs. Matheson filed a motion, on September 27, 2021, to modify and increase temporary support. In the motion, she argued Mr. Matheson had been paying $11,544.00 per month in expenses relating to the marital residence, and because it sold, Mrs. Matheson had to now pay her own rent and her monthly expenses increased. Mrs. Matheson included a list of her monthly expenses totaling $3,508.00. Additionally, Mrs. Matheson indicated the current amount of temporary spousal support, $1,504.96 per month, did not cover these expenses. Mrs. Matheson further requested the trial court make its order increasing temporary support retroactive to September 1, 2021.

**{¶22}** On September 28, 2021, the magistrate "summarily dismissed" Mrs. Matheson's motion to modify and increase temporary support orders. In so doing, the magistrate stated, "[Mrs.

Matheson] filed a motion to modify the temporary support order due to the sale of the marital residence. A pretrial is set on said motion for October 14, 2021. The trial on the underlying divorce matter is set only a month later: November 10, 2021." The magistrate cancelled the October 14, 2021 pretrial on Mrs. Matheson's motion.

{¶23} Mrs. Matheson moved to vacate the magistrate's decision, and also filed an emergency motion for immediate distribution of $6,921.10 from Mr. Matheson's share of the equity in the marital residence, as well as a motion to reinstate her motion to modify and increase the temporary support orders. On October 6, 2021, the magistrate denied Mrs. Matheson's motion to set aside the September 28, 2021 magistrate's order because Mrs. Matheson is receiving $4,300.00 per month in support "to provide for her needs until trial." The magistrate further indicated that because trial was set for November 10, 2021, temporary orders will be a "moot issue." The trial court adopted the magistrate's decision that same day.

{¶24} Although trial began in November 2021, it was delayed several months due to an increase in Covid-19 cases and the trial court's personal medical emergency. Mrs. Matheson again asked the trial court to rule on the issue of temporary orders, and the trial court ordered the parties to submit revised affidavits of income and expenses to the magistrate by January 21, 2022. Both parties complied with this order.

{¶25} On January 28, 2022, the magistrate increased Mrs. Matheson's temporary support to $9,300.00 per month, $7,646.77 of which was for temporary spousal support. However, the increase in temporary support was not made retroactive to September 1, 2021.

{¶26} Based upon this record, the trial court's refusal to make Mrs. Matheson's increase in temporary support retroactive to September 1, 2021, is unreasonable and arbitrary. From the inception of this litigation, Mr. Matheson was ordered to pay Mrs. Matheson's living expenses,

including the first and second mortgages on the marital residence, of which Mrs. Matheson was granted temporary exclusive use; the utilities associated with the marital residence; and other expenses relating to the marital residence. When the marital residence sold, Mrs. Matheson had to begin paying rent and utilities on her own without additional monetary support from Mr. Matheson. Ultimately, after several motions and 6 months had passed, the trial court increased Mrs. Matheson's temporary support to cover these expenses and maintain the status quo based on the same arguments made by Mrs. Matheson in September of 2021.

{¶27} Accordingly, Mrs. Matheson's second assignment of error is sustained.

### III.

{¶28} For the reasons stated above, Mr. Matheson's sole assignment of error is overruled. Mrs. Matheson's first assignment of error is premature, and her second assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas, Domestic Relations Division is affirmed, in part, reversed, in part, and remanded to the trial court for further proceedings consistent with this decision.

Judgment affirmed, in part,
reversed, in part,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

BETTY SUTTON
FOR THE COURT

FLAGG LANZINGER, J.
CONCURS.

CARR, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶29} I respectfully dissent from the judgment of the majority with respect to the resolution of the first assignment of error.

{¶30} Nothing in the trial court's judgment entry indicates that the trial court did not examine spousal support after it altered the property division by ordering Mr. Matheson to be responsible for the debt and by dividing the equity from the sale of the marital residence. Moreover, the parties have not argued that the trial court failed to analyze spousal support on remand. Nor did they assert that the spousal support award was not appropriate because the trial court failed to adjust the award based on the changes to the property division made on remand.

12

APPEARANCES:

DANIELLE KULIK, Attorney at Law, for Appellant/Cross-Appellee.

VINCENT A. STAFFORD, Attorney at Law, for Appellee/Cross-Appellant.